No. 04-97-00761-CR



Richard RODRIGUEZ,


Appellant



v.



The STATE of Texas,


Appellee



From the 227th Judicial District Court, Bexar County, Texas


Trial Court No. 94-CR-3903


Honorable Peter Michael Curry, Judge Presiding



Opinion by: Catherine Stone, Justice


Sitting: Phil Hardberger, Chief Justice

 Tom Rickhoff, Justice

 Catherine Stone, Justice


Delivered and Filed: November 4, 1998


AFFIRMED


 Richard Rodriguez appeals his capital murder conviction, contending that ineffective
assistance of counsel, factually insufficient evidence, and improper conduct by the trial court
contributed to an improper conviction. Because we find no reversible error, we affirm the trial
court's judgment.



Factual and Procedural Background

 Two versions of events are offered by the parties to explain the victim's death. The State
contends that Rodriguez, either acting alone or with Danny Sanchez, planned to rob and kill the
victim, Bill Waltenbaugh. Rodriguez admits being present at the shooting of Waltenbaugh, but
argues that he was not the shooter and that the events leading up to the shooting were not planned,
but the result of an argument. The jury found Rodriguez guilty of capital murder and the judge
imposed a sentence of life imprisonment.

 The facts, according to Rodriguez, are as follows: A few days before the incident, Rodriguez
obtained a .380 Beretta handgun from a friend at school. On the day of the murder, Rodriguez and
Danny Sanchez, another high school student, drove around for several hours, and in the early
evening they parked their car in front of Rodriguez's house. Rodriguez went to knock on his front
door because he was locked out. The victim, Bill Waltenbaugh, lived across the street from
Rodriguez. Waltenbaugh came outside and complained that the car radio was too loud. Sanchez and
Waltenbaugh began to argue, which continued as they moved toward Waltenbaugh's front door,
where Sanchez and Waltenbaugh began to scuffle. Rodriguez walked over to the house when he
saw the struggle at the front door. Sanchez knocked Waltenbaugh to the floor and told Rodriguez
to "go see what he could get." As Rodriguez went to look for the TV, he heard a gun shot and ran
back into the living room to discover Waltenbaugh lying on the floor. Rodriguez then placed a VCR
and a camcorder in Waltenbaugh's car and drove away, following Sanchez in his car.




Conduct of the Trial Court

 In Rodriguez's first point of error, he argues that the trial court improperly commented on
his right to testify, impugning his credibility before the jury. The record reflects that the following
dialogue transpired in the presence of the jury when Rodriguez took the stand:

 THE COURT: Mr. Rodriguez, it's my duty to inform you that you have a
constitutional right not to testify. You may testify if you want to. If you testify, your
testimony may be used against you and you may be cross-examined on it. Do you
understand that?


 THE DEFENDANT: Yes.


 THE COURT: Do you desire to testify?


 THE DEFENDANT: Yes.


Rodriguez admits that trial counsel failed to preserve error because he did not object to the judge's
warnings. We nonetheless address this claim of error because Rodriguez also claims the failure to
object constitutes ineffective assistance of counsel. Based on our review of the record, we conclude
that even if the claim of error had been preserved, the trial court's statements do not constitute
improper conduct.

 A trial judge is required to maintain an attitude of impartiality throughout the trial. Clark
v. State, 878 S.W.2d 224, 226 (Tex. App.--Dallas 1994, no pet.). The Code of Criminal Procedure
specifically prohibits a trial judge from commenting on the weight of the evidence or from making
any remark calculated to convey to the jury the judge's opinion of the case. Tex. Code Crim. Proc.
Ann. art. 38.05 (Vernon 1979). A violation of article 38.05 constitutes reversible error if the court's
comment is reasonably calculated to benefit the State or prejudice the defendant's rights. Marks v.
State, 617 S.W.2d 250, 252 (Tex. Crim. App. 1981).

 To determine whether the comment is reasonably calculated to benefit the State or prejudice
the defendant, a court must first examine whether the trial court's statement was material to the case,
or in other words, if the jury had the same issue before it. Clark v. State, 878 S.W.2d at 226.
Improper comments include statements that imply approval of the State's argument, indicate any
disbelief in the defense's position, or diminish the credibility of the defense's approach to the case.
Id. Error will be harmless if the court determines beyond a reasonable doubt that the trial court's
error made no contribution to the conviction. Id.

 Rodriguez relies on Webb v. Texas, 409 U.S. 95 (1972), to support his contention that the
trial court acted improperly. In Webb, the trial court thoroughly admonished a witness about the
consequences of taking the stand and the consequences of perjury. Id. at 95-96. The court held that
the witness was precluded from making a free and voluntary choice because the judge did not stop
at warning the witness of his right to refuse to testify and of the necessity to tell the truth, but implied
that he expected the witness to lie and assured him of prosecution if he did lie.

 The State argues that the present case is more analogous to Rodriguez v. State, 903 S.W.2d
405 (Tex. App.--Texarkana 1995, pet. ref'd). In Rodriguez, the trial judge informed the witness
"You have a right to invoke that privilege if you choose to and not answer any questions put to you
by either side. Now you understand that?" Id. at 408. The court held that the trial judge simply
explained the right to testify and the right against self-incrimination, although somewhat incorrectly
or incompletely. The comments did not constitute reversible error. Id. See also Safari v. State, 961
S.W.2d 437, 444 (Tex. App.--Houston [1st Dist.] 1997, pet. ref'd, untimely filed) (holding that
warnings to a witness did not impair a defendant's right to compulsory process when the tenor of
the trial court's questions and warnings were inquisitive and the evident focus was an attempt to
ascertain whether the witness knew his rights).

 These cases, however, involve admonishments given to a witness, not to the defendant, and
do not consider the prejudicial effect on the jury, which is our focus under article 38.05. While
generally speaking, a defendant should be treated as any other witness, we must consider whether
these statements would have had a prejudicial effect on the jury. Our review of the record indicates
that the trial court's inquiry was simply an effort to discover whether Rodriguez was aware of his
rights. No where in the dialogue can it be discerned that the trial court disbelieved the defense's
position or approved of the State's, or that the jury would have perceived that to be the case. This
simple explanation of rights neither benefitted the State nor prejudiced the defendant's case.
Accordingly, Rodriguez's first point of error is overruled.

Invocation of Fifth Amendment Rights

 Rodriguez contends that it was reversible error for the trial court to excuse Danny Sanchez
from testifying. Sanchez was sworn in as a witness and called to the stand outside the presence of
the jury. Sanchez informed the court that he did not want to testify. In a subsequent hearing also
outside the presence of the jury, Sanchez indicated that he had discussed the matter with his attorney
and stated that he wished to claim the Fifth Amendment privilege. The court was also informed by
Sanchez's attorney that Sanchez intended to invoke his right against self-incrimination.

 A determination of a claim of self-incrimination is reviewed for an abuse of discretion. See
Clark v. State, 947 S.W.2d 650, 654 (Tex. App.--Fort Worth 1997, pet. ref'd); Decker v. State, 734
S.W.2d 393, 395 (Tex. App.--Houston [1st Dist.] 1987, pet. ref'd). A trial court abuses its
discretion if its decision is outside the zone of reasonable disagreement. See Kelly v. State, 824
S.W.2d 568, 574 (Tex. Crim. App. 1992). A defendant's Sixth Amendment right to compulsory
process does not override a potential witness's Fifth Amendment privilege against self-incrimination.
 Ellis v. State, 683 S.W.2d 379, 383 (Tex. Crim. App. 1984). In determining whether a witness may
invoke the Fifth Amendment right against self-incrimination, the court need only be informed by a
party's attorney that the party intends to invoke the Fifth Amendment privilege at the attorney's
advice. See Castillo v. State, 901 S.W.2d 550, 552 (Tex. App.--El Paso 1995, pet. ref'd). Once so
informed, the trial court need not make further inquiry of that party before ruling that the party will
not be required to testify. Id. While a judge is entitled to determine if the invocation of the right
is based on a good faith claim and is justifiable, it is not required to do so. See Ross v. State, 486
S.W.2d 327, 328 (Tex. Crim. App. 1972); Chennault v. State, 667 S.W.2d 299, 302 (Tex.
App.--Dallas 1984, pet ref'd).

 Rodriguez argues that the judge erred (1) by misstating the proper Fifth Amendment standard
to Sanchez by telling him that "You have a constitutional right not to testify if you don't want to
because whatever you testify to may be used against you," and (2) by failing to allow counsel to
examine Sanchez to determine if he, in fact, would have incriminated himself. The record reflects,
however, that Sanchez made his decision to invoke his right after having the opportunity to speak
to his attorney. It can be presumed from the record then that his decision not to testify was the result
of his attorney's advice. Thus, even if the judge misstated the standard to the witness, it was cured
by compliance with the requirements of Castillo. Rodriguez's second point of error overruled.

Factual Sufficiency of the Evidence 

 Rodriguez contends in his third point of error that the evidence is factually insufficient to
prove he intentionally caused the death of Waltenbaugh. Rodriguez argues that at most, the evidence
supports the contention that he is guilty of felony murder, which requires intent to commit only the
underlying felony, not intent to kill.

 Rodriguez was charged with capital murder by intentionally causing the death of
Waltenbaugh by shooting him with a handgun while in the course of committing robbery. A person
commits the offense of capital murder if that person intentionally commits murder in the course of
committing or attempting to commit kidnapping, burglary, robbery . . . . Tex. Penal Code Ann.
§ 19.03(a)(2) (Vernon 1994). A person acts intentionally "when it is his conscious objective or
desire to engage in the conduct or cause the result." Tex. Penal Code Ann. § 6.03(a) (Vernon
1994). The jury was properly instructed under the law of parties that "if in the attempt to carry out
a conspiracy to commit one felony, another felony is committed, then all conspirators are guilty of
the felony actually committed, though having no intent to commit it . . . ." See Tex. Penal Code
Ann. § 7.02 (Vernon 1994).

 In reviewing a case for factual sufficiency, the court "views all the evidence without the
prism of 'in the light most favorable to the prosecution' and sets aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." Clewis v.
State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Deference should be given to the jury so that
the court is not merely substituting its judgment for the jury's. Id. at 135. The court of appeals
should "set aside the verdict only when the factual finding is against the great weight and
preponderance of the evidence so as to be clearly wrong and unjust, manifestly unjust, shocking to
the conscience, or clearly demonstrative of bias." Warren v. State, 971 S.W.2d 656, 659 (Tex.
App.--Dallas 1998, no pet.).

 Rodriguez points first to his own testimony as evidence of his lack of intent. Rodriguez
testified that he agreed to rob Waltenbaugh knowing that Sanchez had the gun, but that he did not
believe Sanchez would use it. He also testified that he was not even present when Waltenbaugh was
shot. Second, Rodriguez notes that the physical evidence consisted of only his palm print on the TV
stand. The gun was never recovered to complete ballistic testing, and Rodriguez contends that his
earlier possession of the gun does not prove his intent to kill Waltenbaugh.

 Evidence supporting the finding of Rodriguez's specific intent to kill was presented in
testimony from witnesses Cabino, Nelson, and Araiza. Cabino stated that Rodriguez wanted the gun
to kill some old man who lived up the street from him. Nelson testified that Rodriguez said he was
going to shoot someone. Araiza's written statement noted that Rodriguez said he was going to kill
an old man, although he testified that Rodriguez only had the intent to rob. Witnesses Hernandez,
Cabrera, Nelson, and Araiza all testified that after the incident, Rodriguez stated that "'he' or 'we'
shot some old man." Garth Nelson specifically testified that Rodriguez admitted that he forced
Waltenbaugh to his knees and then shot him in the back of the head.

 Given the totality of the evidence presented, we hold that there was sufficient evidence for
the jury to determine beyond a reasonable doubt that Rodriguez possessed the specific intent to kill.
The jury heard testimony that Rodriguez expressed his plan to kill someone before the murder, and
that he bragged about the event after the murder. Even under Rodriguez's version of the murder,
under the law of parties, the jury could properly determine that Rodriguez had the specific intent
to kill Waltenbaugh. Finally, regardless of whether Sanchez or Rodriguez pulled the trigger, the jury
could infer the intent to kill from the use of the handgun. See Adanandis v. State, 866 S.W.2d 210,
215 (Tex. Crim. App. 1993). Because the evidence supports the jury's finding that Rodriguez had
the specific intent to kill, the verdict is not so contrary to the overwhelming weight of the evidence
as to be clearly wrong or unjust. Point of error three is overruled.

Ineffective Assistance of Counsel

 We next consider Rodriguez's numerous allegations of ineffective assistance of counsel. An
accused criminal has the right to effective assistance of counsel under the Sixth Amendment. To
show that a defendant has not received effective assistance, a defendant must prove (1) that counsel's
performance was deficient, and (2) that this deficient performance prejudiced his defense. Strickland
v. Washington, 466 U.S. 668, 687 (1984); Craig v. State, 825 S.W.2d 128, 129 (Tex. Crim. App.
1992). The defendant has the burden of proving ineffective assistance of counsel by a preponderance
of the evidence, and the reviewing court applies a strong presumption that counsel's actions fell
within the wide range of reasonable professional assistance. Valencia v. State, 946 S.W.2d 81, 83
(Tex. Crim. App. 1997).

 Under the first prong of the Strickland test, an appellant must show that counsel's
representation fell below an objective standard of reasonableness based on prevailing norms. Id. at
83. In reviewing the record, every effort must be made to eliminate distorting effects of hindsight,
to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from
counsel's perspective at the time considering the "totality of the representation" rather than isolated
acts of trial counsel. Strickland, 466 U.S. at 688-89. The appellant must also rebut the presumption
that counsel's actions "might be considered sound trial strategy." Id. at 689; Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994). In reviewing the second prong, the court must determine
whether there is reasonable probability that but for counsel's unprofessional errors, the result of the
proceeding would have been different, a probability that is sufficient to undermine confidence in the
outcome of the trial. Strickland, 466 S.W.2d at 694; Jackson, 877 S.W.2d at 771.

A. Failure to call corroborating witnesses

 Rodriguez argues that counsel failed to call two witnesses who could have corroborated his
testimony. He alleges that his neighbors, the Carlisles, could have verified that Rodriguez came
over to their house asking for his brother, corroborating Rodriguez's statements. In his cross-examination of Rodriguez, the prosecutor emphasized the absence of the neighbor to corroborate his
presence at her house. Another neighbor whose lights went on when Sanchez drove up with his loud
stereo was also not called as a witness. Rodriguez contends that these neighbors could have
potentially corroborated several events visible from across the street.

 Rodriguez cites several cases in which the court found ineffective assistance of counsel
where counsel failed to contact and interview witnesses. In each of these cases, however, this failure
was firmly founded in the record. See Ex parte Duffy, 607 S.W.2d 507, 524 (Tex. Crim. App. 1980)
(habeas hearing revealed that counsel did not thoroughly discuss testimony with witness); Winn v.
State, 871 S.W.2d 756, 760-61 (Tex. App.--Corpus Christi 1993, no pet.) (evidentiary hearing
showed that an expert's testimony may have been enough to prevent a finding of homicide). But see
Flores v. State, 576 S.W.2d 632, 633-34 (Tex. Crim. App. 1978) (counsel testified under oath that
he had not conducted a factual investigation or spoken to witnesses and court held that there was
nothing in the record to indicate that efforts were made to contact and interview the witness to
corroborate appellant's testimony).

 The State cites cases which also illustrate the importance of the record. McFarland v. State,
928 S.W.2d 482 (Tex. Crim. App. 1996), cert. denied, __ U.S.__, 117 S.Ct. 966 (1997) ("Any
allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively
demonstrate the alleged ineffectiveness."); Tutt v. State, 940 S.W.2d 114, 121 (Tex. App.--Tyler
1996, pet. ref'd) ("no evidence in the record that either witness was available or that they would have
testified as defendant suggests"); Harling v. State, 899 S.W.2d 9, 13 (Tex. App.--San Antonio 1995,
pet. ref'd) ("record contains no indication of who these witnesses were and what testimony favorable
to appellant they could have provided").

 These cases indicate that the record must reflect that these witnesses were available, how
their testimony would have benefitted the defendant, and that counsel did not seek them out. See
Tutt, 940 S.W.2d at 121 (holding that ineffective assistance of counsel required a showing that the
witnesses were available and that the defendant would have benefitted from their testimony). In the
present case, the record does not clearly support any of these propositions. Even appellate counsel
did not clearly indicate whether their testimony would have been available or that they would have
even testified as Rodriguez contends, but only that they might have corroborated Rodriguez's
testimony. Thus, failure to call these two witnesses does not constitute ineffective assistance of
counsel.

 Rodriguez also complains that counsel failed to subpoena Sanchez, but, as noted, Sanchez
was called and invoked his Fifth Amendment right against self-incrimination. Rodriguez cannot
claim that harm resulted from counsel's failure to subpoena when counsel was able to call the
witness and the witness rightfully refused to testify. Rodriguez's fourth point of error is overruled.

B. Failure to urge pre-trial motions and to suppress juvenile statement

 Defense counsel filed only one pre-trial motion, a motion in limine to prohibit the State from
referring to any gang membership or affiliation. Counsel then failed to object when Cabino was
asked about Rodriguez's gang membership. Cabino answered that Rodriguez was not in a gang but
stated that Rodriguez associated with one. Rodriguez has failed to explain how counsel's failure
to object to such an innocuous reference fell below the standard of professionalism required of
counsel. Such an omission could have been an effort to avoid further calling the subject to the jury's
attention. Rodriguez's conviction was not contingent upon his affiliation with a gang nor was it even
asserted that the wrongful acts were committed in relation to any gang activity. Under the
circumstances, Rodriguez has not shown that this isolated reference to gang association caused the
jury to render the guilty verdict.

 Rodriguez also asserts that the following motions were not filed: motion for discovery,
motion for the production of prior statements, motion for exculpatory evidence, motion for
appointment of a psychiatrist or other expert, and motion requesting a comparison of the fingerprints
taken. Unless there is evidence in the record showing that a ruling on any of the motions would
have changed the outcome of the case, counsel will not be ineffective for failing to assert the motion.
See Roberson v. State, 852 S.W.2d 508, 511 (Tex. Crim. App. 1993). Rodriguez provides little
indication of what these motions would have accomplished. Without any clear indication in the
record of the benefits of these motions, we will not find ineffective assistance of counsel.

 Rodriguez also notes that counsel made no effort to challenge the admissibility of his juvenile
statement for impeachment purposes. The juvenile statement was the only statement in which
Rodriguez stated that he, not Sanchez, pointed the gun at the victim. Counsel filed no motion to
suppress and no motion for a Jackson v. Denno hearing for voluntariness. This statement was used
without objection to impeach Rodriguez on cross-examination.

 In Jackson v. State, 973 S.W.2d 954 (Tex. Crim. App. 1998), the Court of Criminal Appeals
considered the failure of counsel to make a motion to suppress evidence. The court held that to
satisfy the Strickland standard, the appellant was still obliged to prove that a motion to suppress
would have been granted. Id. at 957. Thus, the appellant must show (1) the motion to suppress
would have had merit and (2) that a ruling on the motion would have changed the outcome of the
case. See Jackson, 973 S.W.2d at 956-957.

 In the present case, Rodriguez asserts that his confession was given under duress and
coercion during custodial interrogation while Rodriguez was at the detention center. Rodriguez
argues that the court improperly allowed its use at trial as the statement may have been obtained in
violation of Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 1979 & Pamph. 1998) and Tex. Fam.
Code Ann. § 51.09 (Vernon Supp. 1998). Rodriguez contends that he was prejudiced by both the
unchallenged use of the statement at trial and counsel's failure to preserve any error for appeal.
However, because the confession was not admitted into the record, little evidence in the record exists
to support these contentions.(1) Rodriguez testified that he lied in the juvenile statement and that he
was scared and he believed making the confession would get him out of jail. But Rodriguez also
testified that his attorney was present for at least a portion of this confession. Rodriguez must
establish by a preponderance of the evidence that the motion to suppress should have been granted.
The evidence in the record does not clearly support this contention.

 It is also not clear that a ruling on the motion would have changed the outcome of the trial.
Even if Rodriguez's credibility was not put in contention by the juvenile confession, as previously
noted, the evidence would still support a conviction under Rodriguez's version of the facts.
Therefore, we cannot hold that failure to present a motion to suppress the confession constitutes
ineffective assistance of counsel. Rodriguez's fifth point of error is overruled.

C. Failure to preserve error and failure to request lesser included offense instruction

 Rodriguez contends that counsel consistently failed to preserve error for appeal with respect
to the trial court's comments, Sanchez's testimony, and the juvenile statement. However, as we have
held, none of these complaints present harmful error, and consequently they do not warrant a finding
of ineffective assistance of counsel.

 Rodriguez contends that counsel was also deficient in failing to request any lesser included
offense instructions raised by the evidence, such as involuntary manslaughter (recklessly causing
the victim's death) and felony murder (knowingly causing the victim's death). Counsel only
obtained an aggravated robbery instruction.

 A defendant is entitled to a charge on a lesser included offense if (1) the lesser included
offense is included within the proof necessary to establish the offense charged, and (2) evidence
exists in the record that would permit a jury rationally to find that if the defendant is guilty, he is
guilty of only the lesser included offense. Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim. App.
1993). In evaluating this standard, the court should review all the evidence presented at trial. 
Bignall v. State, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). Anything more than a scintilla of
evidence is sufficient to entitle a defendant to the lesser included charge. Id.

 Involuntary manslaughter and felony murder are lesser included offenses of capital murder.
See Tex. Penal Code Ann. § 19.03(c) (Vernon 1994); Rousseau, 855 S.W.2d at 673; Ross v. State,
861 S.W.2d 870, 874 (Tex. Crim. App. 1992). Under the second prong, then, some evidence must
indicate that Rodriguez could be found to have only recklessly or knowingly caused Waltenbaugh's
death.

 A person commits involuntary manslaughter if he recklessly causes the death of an
individual. Tex. Penal Code Ann. § 19.04 (Vernon 1994). A person acts recklessly when he is
aware of, but consciously disregards a substantial and unjustifiable risk that the circumstances exist
or the result will occur. Tex. Penal Code Ann. § 6.03(c) (Vernon 1994). The evidence shows that
Waltenbaugh was shot execution-style in the back of his head from close range while he was on his
knees. Even under Rodriguez's own version of the facts, he does not indicate that Waltenbaugh was
shot recklessly, but simply argues that he did not shoot him. No evidence indicates that
Waltenbaugh's death was the result of reckless behavior. Thus, no evidence exists in the record to
support the inclusion of an involuntary manslaughter instruction.

 Felony murder occurs when a person commits or attempts to commit a felony, other than
manslaughter, and "in the course of . . . the commission or attempt, or in immediate flight from the
commission or attempt, he commits or attempts to commit an act clearly dangerous to human life
that causes the death of an individual." Tex. Penal Code Ann. § 19.02(b)(3) (Vernon 1994). The
State argues that submitting aggravated robbery to the jury was part of the defense's strategy. It
notes that in some cases, it may be more effective to focus on a relatively narrow defense, rather than
arguing every defense available. The thrust of the defense's case was that Rodriguez was
responsible for the robbery but not the murder. Even if the jury concluded that Rodriguez only
intended to rob the victim, under the law of parties, the charge correctly stated that he would have
then been guilty of capital murder. See Tex. Penal Code Ann. § 7.02 (Vernon 1994). Indulging
the strong presumption that trial counsel was following sound strategy, we hold that failure to
request a felony murder instruction does not constitute ineffective assistance of counsel.

 Additionally, capital murder committed in the course of a robbery does not require that the
intent to cause death be premeditated or formulated prior to the commission of the robbery.
Rousseau, 855 S.W.2d at 674. Under Rodriguez's version of the event, Sanchez aimed the gun at
the victim and fatally shot him. The jury could have concluded that Sanchez had the intent to kill
and acted on it. Under the law of parties, that crime is also attributable to Rodriguez. Rodriguez's
sixth point of error is overruled.

D. Cumulative effect

 Because we have determined that no single action committed by counsel constituted
ineffective assistance, our review of the totality of counsel's representation produces the same result.
Since the record does not indicate reversible harm committed by counsel, Rodriguez's claim of
ineffective assistance of counsel is overruled.

 The judgment of the trial court is affirmed.


 Catherine Stone, Justice

DO NOT PUBLISH



1. Like the Court of Criminal Appeals in Jackson v. State, we recognize that the record on direct appeal may
not be fully developed because of the very alleged ineffectiveness below, especially where the alleged ineffectiveness
is due to omission rather than commission. See Jackson, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). Consequently,
collateral attack may be the more effective route to develop a record. Id. See also Ex parte Duffy, 607 S.W.2d 507, 513
(Tex. Crim. App. 1980).


Return to
4th Court of Appeals Opinions